UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ASSOCIATED BUILDERS AND CONTRACTORS, SAGINAW VALLEY AREA CHAPTER, a Michigan Non-Profit Corporation; COLEMAN ELECTRIC, INC., a Michigan Corporation; HOVEY ELECTRIC, INC., a Michigan Corporation; HELM ELECTRIC, INC., a Michigan Corporation,

Plaintiffs,

v.

Civil Number 91-10373-BC
Honorable Thomas L. Ludington

DEPARTMENT OF LABOR AND ECONOMIC GROWTH; ROBERT SWANSON, Acting Director, Department of Labor and Economic Growth, State of Michigan;

Defendants,

v.

NATIONAL ELECTRICAL CONTRACTORS ASSOCIATION MICHIGAN CHAPTER,

Intervenor-Defendant.
_____________________________________/

**OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISSOLVE INJUNCTION, REJECTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, AND DENYING PLAINTIFFS' MOTION FOR RECONSIDERATION**

In 1992, this Court issued an injunction, ordering the State of Michigan to "refrain from enforcing the ratio and equivalency requirements" of the Michigan Electrical Administrative Act of 1956 (MEAA), Mich. Comp. Laws §§ 338.881 *et seq*., because they were preempted by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, *et seq*. On May 5, 2006, Defendant Department of Labor & Economic Growth and its director, Defendant Robert Swanson,

filed a motion to dissolve the 1992 Injunction under Federal Rule of Civil Procedure 60(b), based on a purported change in the decisional law regarding preemption under ERISA. Subsequently, this Court ordered supplemental briefing to better consider how the constitutional requirement for federal deference to state legislation – in the absence of federal preemption – related to Federal Rule of Civil Procedure 60(b), as well as the State's motion to remove a barrier to enforcing a duly enacted state statute.

Plaintiffs Coleman Electric, Inc.; Hovey, Electric, Inc.; and Helm, Electric, Inc., electrical contractors, and Plaintiff Associated Builders and Contractors, Saginaw Valley Chapter, a trade organization that provides instruction and training to apprentice electricians, opposed Defendants' motion. Intervenor National Electrical Contractors Association Michigan Chapter has joined in Defendants' motion to dissolve the 1992 Injunction and concurred in their arguments and filings.

I.

Enacted on Labor Day 1974, "ERISA is a comprehensive act designed to regulate employee welfare and pension benefit plans . . . ." *Kentucky Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329, 357 (2003). Congress found that millions of employees were affected by employee benefit plans and found it important to ensure that employees and their beneficiaries actually received the benefits that they anticipated. *See* 29 U.S.C. § 1001(a). Among other things, ERISA sets standards for reporting, disclosure, and fiduciary responsibility for pension benefit and welfare benefit plans.

In 1992, Judge Cleland reviewed amendments to the MEAA, which Plaintiffs challenged as preempted by ERISA under 29 U.S.C. § 1144(a). The possibility for ERISA preemption occurs because the definition of an employee welfare benefit plan under ERISA includes "any plan, fund, or program . . . maintained by an employer or by an employee organization, or by both, to the extent

that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, . . . apprenticeship or other training programs . . . ." 29 U.S.C. § 1002(1). The contested MEAA amendments applied to apprenticeship programs. Those amendments included an equivalency requirement (that apprenticeship programs meet requirements equivalent to those imposed by the federal Department of Labor) and a ratio requirement (that the ratio between licensed electricians and apprentice electricians generally be one-to-one, per jobsite). *See* Mich. Comp. Laws § 338.883e.

Relying on *Boise Cascade Corp. v. Peterson*, 939 F.2d 632 (8th Cir. 1991), because at that time "[n]either the Supreme Court nor the Court of Appeals for the Sixth Circuit ha[d] had occasion to consider [the issue]," the Court concluded that ERISA did preempt the state statute. *Associated Builders & Contractors, Saginaw Valley Area Chapter v. Perry*, 417 F. Supp. 49, 51 (E.D. Mich. 1992). The Court compared the preempted Minnesota statute from *Boise Cascade* to the MEAA and emphasized that Michigan's equivalency requirements did even more to establish minimum benefit levels and to restrict employers in determining how to train electrician apprentices than did the Minnesota statute. Based on this analysis, the Court ordered in the 1992 Injunction that the State of Michigan refrain from enforcing the challenged amendments of the MEAA. [Dkt #30].

On May 5, 2006, Defendants filed a motion to dissolve the 1992 Injunction under Federal Rule of Civil Procedure 60(b) because they contend that subsequent decisions clarify that ERISA preemption does not extend to the ratio and equivalency requirements for apprentices under the MEAA. On June 29, 2006, Judge Lawson issued an order referring the motion to Magistrate Judge Charles E. Binder.

On October 26, 2006, the magistrate judge issued his report and recommendation. He recommended denying the motion, concluding that Defendants failed to seek relief from the 1992 Injunction within a reasonable time under Federal Rule of Civil Procedure 60(b)(5). He deemed unreasonable the delay between the filing of Defendants' motion to dissolve the injunction and the issuance of the referenced case law.[1]

Defendants timely filed objections to the report and recommendation, arguing that the magistrate judge erred in his analysis of the timeliness of their motion to dissolve the injunction. This Court set for hearing those objections to the report and recommendation and also directed supplemental briefing on the character of the relief granted by the 1992 Injunction and its subsequent status based on purported changes in the law. Plaintiffs filed a motion for reconsideration of the Court's order of January 17, 2007 that set Defendants' objections for hearing; Plaintiffs primarily took exception to the request for supplemental briefing on issues outside the scope of Defendants' request for review of the 1992 Injunction, based solely on Rule 60(b).

II.

The determination of a motion under Rule 60(b) is within the sound discretion of the trial court. *See Securities & Exchange Commission v. Johnson*, 143 F.3d 260, 263 (6th Cir. 1998). The party seeking to dissolve an injunction bears the burden of showing that a change in circumstances, either in fact or in law, warrants revisiting or modifying that injunction. *See Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 383 (1992).

---

[1]The magistrate judge noted that Defendants filed their motion nine to eleven years from the issuance of the cited Supreme Court decisions and two to six years from the issuance of the cited Court of Appeals decisions.

III.

A.

Federal Rule of Civil Procedure 60(b)(5), in relevant part, provides:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding [if] . . . the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application . . . . The motion shall be made within a reasonable time . . . .

Rule 60(b)(5) governs the modification and dissolution of injunctions. *Deja Vu of Nashville, Inc. v. Metropolitan Government of Nashville & Davidson County*, 466 F.3d 391, 395 (6th Cir. 2006) (citation omitted). Although Rule 60(b) has now supplanted the standard for relief from judgment expressed in *United States v. Swift & Co.*, 286 U.S. 106 (1932), the Supreme Court there stated, "A continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need." *Id*. at 114 (citation omitted). More recently, the Court has held, "[A] sound judicial discretion may call for the modification of the terms of an injunctive decree if the circumstances, whether of law or fact, obtaining at the time of its issuance have changed, or new ones have since arisen." *Rufo*, 502 U.S. at 388 (citations and internal quotations omitted); *see also Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994) ("[C]ourts have always had the inherent equitable power to modify consent decrees imposing ongoing injunctive relief.").

In *Sweeton*, 27 F.3d at 1166-1167, the Sixth Circuit stated:

> Ongoing injunctions should be dissolved when they no longer meet the requirements of equity. The law changes and clarifies itself over time. Neither the doctrines of *res judicata* or waiver nor a proper respect for previously entered judgments requires that old injunctions remain in effect when the old law on which they were based has changed.

Thus, an injunction premised on a subsequently unavailing legal basis is susceptible to dissolution,

despite the importance of finality.

Further, the public has an interest in a flexible standard for modification of decrees that reach public institutions, because the effects of those decrees "reach beyond the parties involved directly in the suit and impact on the public's right to the sound and efficient operation of its institutions." *Rufo*, 502 U.S. at 381 (citations and internal quotations omitted); *see also Ass'n for Retarded Citizens of North Dakota v. Sinner*, 942 F.2d 1235, 1239 (8th Cir. 1991) (citation omitted) (noting the importance of federalism and comity in constraining remedies through a federal court).

Finally, a motion under Rule 60(b)(5) must be brought within a reasonable time. What is a "reasonable time" will depend on the circumstances of an individual case. *Smith v. Sec'y of Health and Human Services*, 776 F.3d 1330, 1333 (6th Cir. 1985); *see also Days Inns Worldwide, Inc. v. Patel*, 445 F.3d 899, 906 (6th Cir. 2006) (citation omitted). Possible considerations include facts particular to a case, such as the length and circumstances of any delay, prejudice to the opposing party from any delay, and the circumstances that compelled equitable relief. *Olle v. Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir. 1990) (citations omitted). Many Sixth Circuit cases that apply the"reasonable time" standard of Rule 60(b)(4) - (6) involve only private parties and a time span of months. Yet the Sixth Circuit did permit, in *Charter Township of Muskegon v. City of Muskegon*, 303 F.3d 755 (6th Cir. 2002), without expressly addressing timeliness, a Rule 60(b)(5) motion to proceed that challenged – in 2000 – the application of a 1972 judgment about the ownership of a municipal utility.

In *Shakman v. City of Chicago*, 426 F.3d 925 (7th Cir. 2005), the Seventh Circuit reviewed a district court's denial of a motion to vacate a consent decree under Rule 60(b)(5), under circumstances very similar to those presented here. There, the city entered a consent decree in 1983

that governed city hiring practices, and the city then challenged the decree in 2002. In particular, the city relied on a decision, that it contended represented an intervening change in the law, issued in 1987. The Seventh Circuit ruled that the denial of the motion as untimely was an abuse of discretion. "[A]ny consideration of a 'reasonable time' for filing a Rule 60(b) motion with respect to the 1983 [consent decree] must take into account the nature of that litigation as well as the resulting prejudice, if any, to the present elected officials and the public they represent." *Id*. at 934. Further, the failure to adopt a flexible standard to account for the unique circumstances involving public interest litigation constituted an abuse of discretion. *Id*. "Institutional reform litigation, and consent decrees attendant to that litigation, involve considerations of public interest and federalism that are not present in the run-of-the-mill civil case." *Id*. The Seventh Circuit then reversed the denial of the motion to vacate and remanded with instructions to consider the current state of the law, subsequent the entry of the consent decree. *See also Central Vermont Public Service Corp. v. Herbert*, 341 F.3d 186, 189 (2d Cir. 2003) (finding timely a Rule 60(b) motion filed over four years after entry of an injunction, although the party had actual notice in less than two months).

Based on the above-described legal standards, Defendants have properly filed a motion under Rule 60(b)(5), using an appropriate mechanism to challenge a purportedly inequitable judgment with ongoing application. Without question, the 1992 Injunction barring the enforcement of a duly enacted state statute has prospective application. *See Kalamazoo River Study Group v. Rockwell Int'l Corp.*, 355 F.3d 574, 587 (6th Cir. 2004) (citation omitted) (stating that injunctions are prospective judgments susceptible to a Rule 60(b)(5) challenge). The elimination of the legal predicate on which that injunction issued – if so found – would create an inequity, because the people of the State of Michigan would be denied the benefit of their state statute. Indeed, under

*Rufo* and *Sweeton*, courts have the authority to modify or dissolve injunctions when circumstances, including a change in the law, so require. Here, the 1992 Injunction issued because the Court concluded that the law – as decided at that time – required the preemption of a state statute by a federal statute. Yet if, as Defendants claim, the precedents regarding ERISA preemption have shifted, then the legal foundation for the 1992 Injunction may no longer exist. Continued enforcement by a federal court of an injunction against the enforcement of a state statute with, allegedly, no legal basis for that injunction strikes at the heart of federalism.

Additionally, courts must apply a more flexible standard to cases involving not only private litigants but public interests. Here, the parties in interest are not only those present before the Court, but the Legislature of the State of Michigan that enacted the enjoined statute and the people of the State of Michigan. The presence of these public interests, then, inform on the of timeliness of the motion to dissolve the injunction. Courts must consider the facts of each case in determining reasonableness, and the facts of this case implicate not only the parties, but the people of the State of Michigan and their elected officials. Although the Supreme Court and the Courts of Appeals issued the case law argued by Defendants up to eleven and six years ago, respectively, that length of time does not dictate that the motion to dissolve was not timely filed. As in *Shakman*, where thirteen years passed between a change in the law and the filing of the motion to dissolve, the interests in federalism and of the public render the instant motion filed within a reasonable time. These interests differentiate this case from a "run-of-the-mill" civil case. Accordingly, this Court has the authority, under Rule 60(b)(5), to consider the substantive argument advanced by Defendants.

B.

As discussed above, the 1992 Injunction issued after the Court concluded that ERISA preempted the MEAA ratio and equivalency requirements. Defendants contend that subsequent changes in the decisional law dictate that ERISA no longer preempts the challenged MEAA provisions; Plaintiffs argue that, despite developments in ERISA precedents, the MEAA remains preempted.

At a hearing on March 15, 2007 which focused on the extent of the Court's authority under Rule 60(b)(5), the parties agreed that no more briefing on the substantive issues was warranted. The parties argued for holding an additional hearing regarding the substantive issue of ERISA preemption, which the Court did set, but the Court also reserved the right to reassess the value of an additional hearing. The Court has again reviewed the parties' submissions and concludes that further oral argument will not aid in the disposition of the motions. Accordingly, it is **ORDERED** that the motions be decided on the papers submitted. *See* E.D. Mich. LR 7.1(e)(2).

Today, as well as in 1992, 29 U.S.C. § 1144(a) provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any [non-exempt] employee benefit plan . . . ." In 1992, to interpret the phrase "relate to," this Court relied on current decisions from the Supreme Court, i.e., *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85 (1983) and *FMC Corp. v. Holliday*, 498 U.S. 52 (1990), as well as *Boise Cascade*, a 1991 decision from the Eighth Circuit. Since that time, the Supreme Court and several other circuits have further interpreted the preemption statute.

In *California Division of Labor Standards Enforcement v. Dillingham Construction, N.A., Inc.*, 519 U.S. 316, 324 (1997), the Supreme Court considered a case that involved an ERISA

preemption challenge to a state statute that implicated apprenticeship programs. More specifically, the California prevailing wage statute permitted contractors to pay a lower wage to workers who participated in a state-approved apprenticeship program. In determining whether the prevailing wage statute was preempted by ERISA, the Supreme Court underscored the breadth of "relate to" in 29 U.S.C. § 1144(a) and reiterated the phrase's meaning as applying to a law that either makes "reference to" or has "connection with" an ERISA plan. *See also Davies v. Centennial Life Ins. Co.*, 128 F.3d 934, 938-939 (6th Cir. 1997). For an apprenticeship program to have a reference to an ERISA plan, it must act "immediately and exclusively" on ERISA plans. *Dillingham*, 519 U.S. at 325. That is, the existence of an ERISA plan must be essential to the law's operation, such as when an ERISA plan is the source of funding for the apprenticeship program. *Id*. at 325, 327. Regarding laws that had any "connection with" ERISA plans, the Supreme Court commenced its analysis from a presumption against preemption of an area of law long regulated by the states. *Id*. at 330-332. A state law that alters economic incentives – without dictating choices for plan administrators – does not create a sufficient connection to require preemption.[2] *Id*. at 332-334. Based on the fact that compliance with the California prevailing wage statute did not require an apprenticeship program, the Supreme Court concluded that ERISA did not preempt those state apprenticeship program requirements.

Subsequent to *Dillingham*, several circuits have also found certain state apprenticeship program statutes not preempted by ERISA, often emphasizing provisions that permit employers to

---

[2]*See also New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 659 (1995) ("[A]n indirect economic influence . . . does not bind plan administrators to any particular choice and thus function as a regulation of an ERISA plan itself").

elect out of state requirements, albeit at a cost. *See, e.g.*, *Ferguson Electric Co., Inc. v. Foley*, 115 F.3d 237 (3d Cir. 1997) (Pennsylvania law that permits employers an exception to statutory prevailing wage rate and creates an incentive to hire apprentices from state-approved apprenticeship programs); *Willmar Electric Service, Inc. v. Cooke*, 212 F3d 533 (10th Cir. 2000) (Colorado statute that requires a one-to-one supervision ratio of licensed electricians to apprentices but permits "any person" – i.e., imposes no other requirement – to work as an apprentice electrician); *Wright Electric, Inc. v. Minnesota State Bd. of Electricity*, 322 F.3d 1025 (8th Cir. 2003) (finding Minnesota electrician statute indistinguishable from *Willmar*, in contrast to the Minnesota sprinkle fitter statute at issue in *Minnesota Chapter of Associated Builders and Contractors, Inc. v. Minnesota Dep't of Public Safety*, 267 F.3d 807 (8th Cir. 2001)); *Associated Builders and Contractors of Southern California, Inc. v. Nunn*, 356 F.3d 979 (9th Cir. 2004) (same California statute as in *Dillingham*); *Oregon Columbia Brick Masons Joint Apprenticeship Training Committee v. Gardner*, 448 F.3d 1082 (9th Cir. 2006) (Oregon statute that limits the number of state-approved apprenticeship programs to a geographic area's needs, though contractors need not hire state-approved apprentices).

Yet, in *Minnesota Chapter of Associated Builders and Contractors, Inc. v. Minnesota Dep't of Public Safety*, 267 F.3d 807 (8th Cir. 2001) (hereinafter *Minnesota ABC*), the Eighth Circuit reviewed a state statute that required contractors to adopt state-approved apprenticeship programs and ruled the statute preempted by ERISA. The Minnesota statute permitted only licensed journeymen and registered apprentices to participate in fire protection work. The statute further required contractors to maintain an apprenticeship program approved by the state board and to register all their apprentices in an approved apprenticeship program. The statute also set out requirements for approved apprenticeship programs, including the duration of the program, the wage

structures and scales for apprentices, the amount of hours of instruction, and the ratios for the registration of apprentices to journeymen. In contrast to the statutes at issue in *Dillingham* or in *Willmar*, the Minnesota statute dictated which persons could fulfill the work, including registered apprentices, but the state would register only apprentices from statutorily governed apprenticeship programs. *Id*. at 815. Consequently, the court concluded that the statute did not provide only economic disincentives but dictated the terms by which apprenticeship programs could exist. *Id*. Based on the unique and mandatory provisions of the statute, the court concluded that ERISA operated to preempt that statute.

Similar to the scheme in *Minnesota ABC*, the MEAA sets out mandatory obligations on employers of electrical apprentices. Mich. Comp. Laws § 338.883e, in relevant part, provides:

> (1) An individual employed as an apprentice electrician shall register with the board on a form provided by the board within 30 days after employment.
>
> (2) The department of labor shall issue a certificate of registration to a person seeking registration upon satisfactory proof of the person's participation in a bona fide apprenticeship training program approved by the board. This program shall be equivalent to the requirements of those imposed by the United States department of labor bureau of apprenticeship and training, subject to subsection (3).
>
> (3) Except as otherwise provided in subsection (4), the ratio of electrical journeymen or master electricians to registered apprentice electricians shall be on the basis of 1 electrical journeyman or master electrician to 1 registered apprentice electrician. The department of labor or an enforcing agency shall enforce the ratio on a jobsite basis.

Apprentice electricians must register with a state board. That board may only approve apprentice electricians who complete a training program equivalent to the standards set forth by the Department of Labor. Further, on each jobsite, the ratio for apprentice electricians to more experienced electricians (either journeymen or master electricians) must be one-to-one. These equivalency and ratio requirements are just that – requirements – not elective matters that either apprentice electricians or their potential employers can elect out of, even by the payment of a financial expense.

Although these requirements would apply to any ERISA apprenticeship plan for electricians in Michigan, they do not act "immediately and exclusively" on ERISA plans. These MEAA provisions can operate without application to an ERISA plan, such as if a single employer operated an apprenticeship program out of that employer's general assets. Consequently, these provisions would not be preempted under the "reference to" prong of the test for preemption under 29 U.S.C. § 1144(a).

Yet, under the "connection with" prong, similar to *Minnesota ABC*, these provisions do more than create economic incentives. Rather, the MEAA provisions set out the conditions for existence of an electrician apprenticeship program and the terms for its continuance without incurring an action by the enforcing agency. Here, the state statute does dictate the choices of ERISA plan administrators by setting unavoidable obligations, so these provisions of the MEAA do have a "connection with" an ERISA plan. Thus, under § 1144(a) and *Dillingham*, these provisions of the MEAA remain preempted.

Despite Defendants' ability to seek to dissolve the 1992 Injunction under Rule 60(b)(5), the developments in the case law do not result in an inequity in prospective application of this injunction. Consequently, the Court is not persuaded to dissolve the 1992 Injunction. Any subsequent changes in the law regarding ERISA do not alter ERISA's preemptive force on a state statute that mandates the obligations of an electrician apprenticeship program.

IV.

Accordingly, it is **ORDERED** that Defendants' amended motion to dissolve the 1992 Injunction [dkt #63] is **DENIED**.

It is further **ORDERED** that the magistrate judge's report and recommendation [dkt #85] is **REJECTED**.

It is further **ORDERED** that Plaintiffs' motion for reconsideration [dkt #95] is **DENIED** as moot.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: April 3, 2007

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 3, 2007.

s/Tracy A. Jacobs
TRACY A. JACOBS